OPINION
Appellant Reno Valle appeals his conviction, in the Stark County Court of Common Pleas, for two counts of rape and two counts of gross sexual imposition. The following facts give rise to this appeal. At trial, it was alleged that appellant sexually abused the granddaughter of his live-in-girlfriend, Betty Derflinger. The abuse began when the child was five years old and continued until age nine when she contracted genital herpes. At the time the child began pre-school, appellant would pick her up from preschool every Tuesday and babysit her. Appellant would also babysit the child whenever she visited her grandmother. While alone with the child, appellant fondled her private parts, touched her over and under her clothing, performed cunnilingus on her and forced her to perform fellatio on him. Appellant also showed the child pornographic movies and adult magazines. Appellant told the child not to tell anyone about the abuse and it would be their secret. In May 1998, after the child developed problems urinating, the child informed her mother of the abuse. The child's mother took her to the emergency room where she was diagnosed with herpes. Betty Derflinger immediately confronted appellant about the abuse. Appellant denied abusing the child but admitted that Derflinger almost caught him abusing the child in the backyard shed. As a result of this conduct, the Stark County Grand Jury indicted appellant, on December 7, 1998, with two counts of statutory rape and two counts of gross sexual imposition. The indictment alleged a continuing course of conduct over a four-year period. Appellant entered a plea of not guilty and this matter proceeded to trial on March 1, 1999. Appellant testified, at trial, and denied that he ever told Betty Derflinger that she almost caught him with the child. Appellant also denied having the herpes virus and indicated that he thought the child's cousins abused her. Following deliberations, the jury returned a verdict finding appellant guilty of the charged offenses. The trial court sentenced appellant to an indeterminate term of ten to twenty-five years on the pre-Senate Bill 2 rape charge; a determinate term of ten years on the post-Senate Bill 2 rape charge; a determinate term of two years on the pre-Senate Bill 2 gross sexual imposition charge; and a determinate term of five years on the post-Senate Bill 2 gross sexual imposition charge. The trial court imposed the sentences consecutively. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE COUNTS OF INCARCERATION, IN VIOLATION OF O.R.C. 2941.25.
 II. THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN PERMITTING JUROR NUMBER 129 TO SERVE AFTER EXPRESSING AN INABILITY TO BE FAIR.
 IV. APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 V. OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
In his First Assignment of Error, appellant contends the trial court erred in sentencing him to consecutive terms on each offense. We disagree. Appellant argues, in this assignment of error, that the trial court should have merged each count, into one, prior to sentencing. In support of this argument, appellant relies on R.C. 2941.25. This statute provides:
Multiple counts.
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Pursuant to the language of the above statute, a defendant may be convicted and sentenced on two separate offenses that are allied offenses of similar import where the offenses are committed separately or with a separate animus as to each offense. In the case sub judice, the trial court specifically stated, at the time of sentencing, that the crimes were committed with a separate animus. The court stated: With respect to the consecutive sentence on the charges, the Court wants to make it very clear that based upon the testimony, the Court finds there was a separate animus for each of the violations. These were separate and distinct crimes, and that is why the Court is imposing separate and consecutive sentences with respect to each of the crimes. I want to make that clear for the record.
Additionally, the Court wants to make it clear that analysis is based in part upon the 5th District Court of Appeals opinion is (sic) State versus King, which was rendered by the Fifth District on May 20, 1996, as well as the analysis established by the Supreme Court and the test established by the Supreme Court in State versus Blankenship, a 1988 case. Tr. Vol. II at 336.
We find the trial court's conclusion is supported by the evidence in this case. The victim testified about the repeated nature of the abuse, which occurred on an almost weekly basis for more than four years. Tr. Vol. II at 161, 162, 167, 171. It is evident from the victim's testimony that the acts occurred on different dates and at different locations. Appellant also argues that he, in essence, only committed one act of rape and one count of gross sexual imposition and the state arbitrarily created a second count for each offense by dividing the charges along Senate Bill 2 lines. We find the division was required by law. Appellant abused the victim over a four-year period. Part of the abuse occurred prior to the effective date of Senate Bill 2. Appellant continued to abuse the child after the effective date of Senate Bill 2. The offenses of rape and gross sexual imposition are treated differently depending on whether they occurred prior to or after the effective date of Senate Bill 2. Based on the above, we conclude the trial court did not err when it sentenced appellant to consecutive counts of incarceration. Appellant's First Assignment of Error is overruled.
 II
Appellant contends, in his Second Assignment of Error, that the evidence at trial was insufficient to support a conviction and the jury's verdict was against the manifest weight of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Appellant contends there was no evidence presented as to the time of the offenses, no evidence that oral touching occurred to justify the rape conviction, and no evidence to fit the offenses within either of the two time frames for each charge. We find the evidence presented at trial was sufficient to support appellant's conviction and the jury's verdict was not against the manifest weight of the evidence. The victim testified concerning the nature of the abuse perpetrated by appellant. Based on her testimony, it is reasonable to infer that appellant engaged in both cunnilingus and fondling over a four-year period. The victim also testified concerning the frequency of the abuse. Appellant also took the stand, at trial. This gave the jury the opportunity to assess his credibility. We find the evidence, if believed, was sufficient to support appellant's conviction. We also find the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's Second Assignment of Error is overruled.
 III
In his Third Assignment of Error, appellant maintains the trial court erred in not removing Juror No. 129 during voir dire. We disagree. The record indicates Juror No. 129 was one of several jurors who expressed revulsion of the nature of the charges against appellant. This juror stated, during voir dire:
 JUROR NO. 129: I have a kid with the same name and she's 13. And I think that is too similar.
 THE COURT: Again, during this process we just need to know if you can be fair and impartial. And that's why we are asking. As the Court said there are no right or wrong answers.
 Could you set that aside and make a decision in this case based upon the evidence received in the courtroom and the instructions of law that the Court gives to you or do you think you would not able to do that.
 JUROR NO. 129: My temper might get the best of me and I might get a little blockage in the thought process.
THE COURT: You are indicating you could not do that?
JUROR NO. 129: I could try. * * *
 THE COURT: * * * And I guess my one question for you is: Can you follow the instructions of the law in that respect and could you make a decision in this case based upon the evidence received in the courtroom and the instructions of law that the Court gives to you?
 JUROR NO. 129: I felt calm up until what you said the charge was, then I could feel blood coming up to my head.
THE COURT: What is your answer to that question?
JUROR NO. 129: No, I could probably not be fair with this trial.
Tr. Vol. I at 44-46.
The record indicates that neither counsel inquired, of Juror No. 129, concerning his hesitancy about being fair and impartial. The record also indicates defense counsel removed five prospective jurors, for cause, which the trial court approved. Defense counsel only used one of his peremptory challenges to remove a prospective juror. Under these facts, we find appellant waived any error concerning the trial court's failure to sua sponte remove Juror No. 129 since appellant used only one of his peremptory challenges. In State v. Mauer (1984), 15 Ohio St.3d 239, 268, certiorari denied (1985), 472 U.S. 1012, the Ohio Supreme Court held explained that: With respect to the prosecutor's voir dire questions, we find that appellant identifies and attacks only one episode involving only one juror. This juror was subsequently seated on the jury. Appellant neither challenged the seating of this juror for cause, nor did he exercise any of his peremptory challenges to prevent this juror from serving. We do not think appellant can now be heard to complain that the jury was prejudicially influenced by the prosecutor's questions. Since appellant could have taken corrective action, and did not, we decline to consider this issue.
We find the trial court did not err in failing to remove Juror No. 129 when appellant did not exercise a peremptory challenge to remove the juror and did not request the trial court to remove the juror for cause. Appellant's Third Assignment of Error is overruled.
 IV
Appellant contends, in his Fourth Assignment of Error, that he was denied effective assistance of counsel because defense counsel failed to remove Jurors Nos. 129 and 153, failed to object to emergency room records, and failed to object to the imposition of consecutive sentences. We disagree. The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St.3d 136. These cases require a two-prong analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective. Whether counsel's performance fell below an objective standard of reasonable representation and violative of any of his essential duties to the client. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. State v. Carter (1995), 72 Ohio St.3d 545,558, citing Lockhart v. Fretwell (1993), 506 U.S. 364. It is based on this standard that we review appellant's Fourth Assignment of Error. In appellant's First Assignment of Error, we determined the trial court properly sentenced appellant to consecutive sentences. Therefore, this argument cannot be the basis for a claim of ineffective assistance of counsel. As to the removal of Juror No. 129, we find defense counsel's conduct did not fall below an objective standard of reasonable representation. The selection of jurors is within the ambit of trial strategy. As long as the juror indicates he can be fair and impartial, defense counsel was not ineffective for failing to exercise a peremptory challenge. Lakewood v. Town (1995), 106 Ohio App.3d 521, 526, citing State v. Buchanan (Feb. 14, 1992), Union App. No. 14-91-14, unreported. Although Juror No. 129 indicated that he could not be fair due to the nature of the charges, he later did not indicate that he could not render a verdict solely on the evidence presented at trial and the law provided, to the jury, by the trial court. Specifically, the trial court presented the following question to the entire jury venire:
 In arriving at your verdict is there any one of you that cannot lay aside such matters as race, religion or sympathy? None of these is to have any effect on your deliberations in this case.
 Is there any one of you that cannot base your verdict solely upon the facts as testified to by the witnesses, the exhibits that are admitted into evidence and the law as it is given to you by the Court?
 Is there any reason why you could not serve on this jury and render a fair and impartial decision when the case is finally submitted to the jury?
Tr. Vol. I at 51-52.
Juror No. 129 never indicated, to the trial court, that he could not base his decision, in this case, upon the facts, evidence and the law as instructed by the trial court. Based on Juror No. 129's lack of response, we conclude Juror No. 129 decided he could be fair and impartial in reaching a verdict. Accordingly, we conclude defense counsel was not ineffective for failing to challenge for cause or use a peremptory challenge to remove Juror No. 129. Appellant also argues, under this assignment of error, that defense counsel was ineffective for failing to remove Juror No. 153. The record indicates that at the close of the state's case, Juror No. 153 brought to the bailiff's attention the fact that he recognized the victim's grandmother and appellant. The juror recognized them from school and scouting functions, however, he indicated he did not really know them and that he could base his decision solely upon the evidence. Tr. Vol. II at 217-220. Defense counsel indicated he was satisfied with Juror No. 153's answers. Id. at 220. We have reviewed this portion of the transcript and find defense counsel was not ineffective for failing to request that Juror No. 153 be removed. Finally, appellant claims defense counsel was ineffective for failing to object to the admission of emergency room medical records which indicated that the victim was treated for herpes in May 1998. Appellant did not argue that the victim had not been molested. Appellant's argument was that he could not have molested the victim since he did not have herpes. We do not find defense counsel was ineffective for failing to object to the admission of this evidence based on the nature of appellant's defense at trial. We conclude defense counsel's performance did not fall below an objective standard of reasonable representation and violative of any of his essential duties to appellant. Appellant's Fourth Assignment of Error is overruled.
 V
In his Fifth Assignment of Error, appellant claims there are errors which are apparent on the record but not raised in his brief. We disagree. In support of this argument, appellant relies on the case of Anders v. California (1966), 386 U.S. 738. We find a claim pursuant to Anders has no merit because appellate counsel filed a brief and assigned four assignments of error for our consideration. Appellant's Fifth Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
FARMER, P.J., and READER, V. J., CONCUR.